Be seated. Your Honor, it's the third case of the morning. Call 213-545 People v. Patrick Cook. On behalf of the Appalachians, Mr. Fletcher, T. Hammond. On behalf of the people, Mr. Scott Jacobs. And I, on our last argument, officer, when you sat down, he thought that the buzzer had gone off and that's why he got nervous. But I can understand why it's hard with guns and things sitting down in the chair. So just listen for the bell, not the squeak. Mr. Hammond. Good morning, Your Honors. My name is Fletcher Hammond. I represent the defendant, Appalachian Patrick Cook. Can I please record? The issue in this case is whether the record reflects that the judge adequately inquired into the defendant's fitness before finding him fit to stand trial. And the law on this issue is relatively straightforward, and it is set forth in the three cases that are discussed in the threes, Contorno, Robinson, and Goodman. And the core rule that comes out of those three cases is that there must be some showing on the record that the judge independently, or when the parties hold a fitness hearing by stipulation and they stipulate to the findings of a psychiatrist, the record must show that the judge independently determined that the defendant was fit rather than simply accepting the stipulation. And so we know that he saw the defendant and may have seen some conduct. Do we have that conduct anywhere reflected in the record? Well, what we have in the record, the issue was raised by defense counsel initially, and that what defense counsel was concerned about mostly was in the defendant's past and current situation. The fact that he was mentally disabled. I think counsel's information was he had the mental age of a six or seven-year-old. He could not live on his own, and he was working through an organization for mentally disabled people. So that was the initial concern. All right. Now, when the case gets to Judge Ackman, who apparently takes this stipulation or whatever we're going to call it. Correct. Is there anything that he reflects in the record in terms of conduct or circumstances involving the defendant? Nothing. All right. And how about then Judge Bowles when she ultimately takes the plea? Now, Judge Bowles... Or does the motion to reconsider. I'm not sure which that was, but I know she's the last judge involved. Right. And she does take the plea. I don't recall if Judge Bowles... I don't recall what Judge Bowles would have said about fitness at that time. Obviously, by the time Judge Bowles took the case, or by the time the case reached her, this fitness issue was being treated as long over. And that was Judge Ackman, part of Judge Ackman's role. Correct. All right. And really, before that, Judge Ackman held this hearing. That was actually 13 months after the Judge Gallagher... Well, actually, after the report was filed. Judge Gallagher had ordered the evaluation earlier than that. And during that 13-month period, both Judge Gallagher and Judge Ackman and the parties all acted as though this issue was resolved. And they proceeded to litigate other issues. There were all kinds of issues involving home monitoring that the defendant was on. And they litigated these issues, and they did discovery and set dates, trial dates, and tried to get through the case. They never discussed this fitness. Not during that period. And then 13 months later, after the initial report, they finally do. And what they do is actually, in writing, they file a stipulation and the proposed order, and Judge Ackman signs the order without having any hearing in court at all. And then a month after that, they have this fitness hearing, which is essentially a few sentences where Judge Ackman says, based on the stipulation, I make the findings so indicated. So during the stipulation, there was no basis for the expert's opinion? So no details stated to the court with respect to the expert's opinion? Correct. They say that you will testify. They said something like expert will testify consistently with? With his report. And the expert's report, of course, does have all these details in it. Did Dr. Brown appear at that hearing? No. No. So this case falls into this line of cases with Quintorino and Goodman and Robinson. And what you see when you look at Quintorino, obviously this is the case where the judge or the appellate court found that the record was not sufficient. And then Robinson and Goodman were the ones where the record was sufficient. And what you see is the difference between the records in those three cases is that in Robinson and Goodman, there's always something else, something on the record that the appellate court can point to to say, even though the judge didn't say I'm independently considering this at the time, there's something there that the appellate court can conclude that he really did side on it. What about the fact that there were other proceedings even after the report was filed where I'm assuming the defendant was at least present? And so there was no concern by his counsel that he could not participate in the proceedings. Well, that's true. He was present. In this case, the defendant really didn't do much on the record. I think there are a few hearings where he might have said a few words, but there's nothing like Goodman where the defendant actually testified at a motion to suppress. And so the judge was able to obviously observe all that. Well, how is this case so different from Robinson? Because it does say consistent with the report dated such and such a date, and the report laid out all of the findings. How is this different? The stipulation itself in this case is pretty much identical to the stipulation in Robinson. The difference between this case and Robinson is what happened in court. There's two differences. One is what happened in court, and that is that the judge asked the defendant whether or not she was still using her medication. And that's very important in Robinson because the defendant in Robinson had been found, she'd been evaluated multiple times, had been found to be fit when she's on her medication and unfit when she was not. So she kind of had a binary fitness issue where she either was or wasn't. And so by inquiring of the defendant, are you on your medication, the judge was showing an independent evaluation of her fitness. And it was really learning everything he needed to learn in order to be able to determine it. Do you think if the judge in this case would have said, I am going to accept the stipulation of Dr. Brown's findings and I reviewed those findings, I will accept the stipulation, would we be in a different place right now? Well, if it was merely I reviewed those findings, maybe, maybe not. I agree with those findings, I think we would be. And that's really, that's kind of the crux of this is that the cases don't really require all that much to be set on the record by the judge. But they do require more than what was here. And what these cases, these internal problems in government, what this is about, these are cases where the judge didn't say those things at the time. You know, that one thing that I independently agree with the expert. And the appellate courts are left to, you know, kind of parse through the record and find, you know, and kind of divine that he did it silently. And so what separates the cases where there's enough and where there's not enough is whether or not there's something else out there that the court can point to. Was the defendant placed on a home monitoring system? He was, he was. And there were all kinds of problems with it. That was going to be my next question. They were litigated. Was it ever revoked? It was. I don't remember exactly. There were there. I don't know if he actually revoked him at one point and then put him back on. It's possible. And did Justice get. I'm sorry. Judge Gallagher do most of this. We have the hearings on on these issues. Correct. It was about. Well, it's about half and half. I think it was just as Gallagher passed away, I think, about halfway through through this period, because we're talking basically October 2010 until December 2011. And in this case, so there just isn't there isn't anything in this record that shows that judge Ackerman had any did anything to independently evaluate the fitness. And not only that, but it really is what is in the record is a strong indication that everybody, including judge Ackerman, considered the fitness issue resolved the day that Dr. Brown's report was filed. The case just once that was filed, the case just continued on the way the way it would if had there been a fitness hearing when they finally do it. It's by it's by a written stipulation off the record at first. And then we finally do just this one quick stipulation. And I'm sorry. Well, do we have any evidence in this record that Mr. Cook was taking any medications or was that part of this document? Or don't we know what this document said, but for the fact that it's in the record. Well, we do know we have a document in the record. It's not so much a matter of medications as is a matter of mental deficits. And Dr. Brown, although he did ultimately find the defendant fit, he found significant mental deficits here. For one thing, the inability to. And actually, I take that back. I believe he was. I believe there is an indication on the record that the defendant was taking antidepressants. But more importantly than what was in the stipulation or in the record, is that. Whether or not the trial court inquired us to that or whether the trial court looked deeper into that. Isn't that what's more important than what's what was actually done with the with the status of the defendant was absolutely. I don't think anybody here probably disagrees that he was probably not fit. But how is this? Isn't that my question? Isn't that what's important? The reaction and the response of the judge based on this and based on Robinson? I believe so. And I certainly believe so. Although I say otherwise, because because that's what we end up with. You know, these these three cases before our office and this is these are all cases where the judge didn't require that. That's kind of the baseline that gets us into this. This line of cases. So. But yeah, I had the judge inquired. This would be very easy. And it really doesn't take a whole lot. It takes about a sentence. And one other thing I should point out is, is that this is the underlying fitness issue. In this case, it is not like the issue in and say, Robinson, where it was a simple binary issue. This was a complicated issue. This was, you know, nobody can deny that there were there are significant mental deficits here and very, very concerning ones, including, you know, the defendant's description of the courtroom as a big room with two doors. It clearly, you know, his understanding of the process was definitely less than that of of a normal adult. And, you know, and there was a judgment call whether or not he was, you know, low, you know, where there was low enough to where it would render him unfit. And Dr. Brown thought in his judgment that the defendant was fit, but a reasonable person could disagree with that. So this was a case where it was very important to have the judge's independent evaluation. And it was lacking in this case. And I just finally I did bring up in my opening agreement to discuss waiver and and harmless error. And I would just note that the state has conceded that the waiver actually was conceded that this is reviewable for plain error. And the state also forfeited the harmless error argument. So I would I would ask that if your honors find that the judge in fact error, that this also be considered reversible error. And unless your honors have any further questions, I would ask that you reverse the trial court's order and demand the cause for a proper fitness hearing. Thank you. Thank you, Mr. Jacobson. Madam President, Justice, and may it please the court. I don't mean anything that I say here to be taken that this was an ideal fitness proceeding. It was not by any stretch. However, the question before this court is whether or not the fitness proceeding below complied with Article 104 of the Code of Criminal Procedure. The answer to that question is that it does. The argument made by the defendant. You have a how. How does it comply? How? I mean, do you have, let me ask you, do you have, did the judge exercise his discretion? And if so, how did he exercise his discretion in this case? Okay. Let me, let me, I would say yes, the judge exercised his discretion. The presumption, of course, is that the trial court judge is familiar with the court file, read, you know, the stipulation that the party submitted to the court. Well, I think that, yeah, it looks like he read the stipulation. The issue is, did he read the report? Did he or she, did he know, did any of those three judges know what that report said? The fitness report. I would say that the same presumption applies. I mean. Why? Especially when you look at the, especially when you look at the written stipulation. He said, I think he said he received and entered it that day. He received it the same day. I don't know that, I think what he meant was that the stipulation was received and entered that day. I don't think that it meant that the fitness report was received and entered that day. I mean, you were all trial court judges. You know that when the diagnostic center or the 10th floor, if you're in Cook County, when they write a fitness report, it goes into the court file immediately. You don't need to wait for the parties to submit it. And it goes in the court file. That's true. You have the record. And in the record is a sealed envelope from Kane County Diagnostic Center with Dr., I can't, I can't recall now if it's Dr. Brown or Dr. Browning. Dr. Timothy Brown. Dr. Timothy Brown. It was Dr. Brown's report, which was received and entered. And if you look in the record chronologically, I believe that the report, which was generated in September of 2011, is in the court file, or is in the record on appeal, common law record, chronologically in September of 2011. Not at some subsequent date. But did it, so, but didn't the Thompson case, are you familiar with the Thompson case? Didn't the Thompson case indicate that the court, there's no indication that the court ever reviewed the report? So that case says to me, giving some guidance, that they want, that the court want the judge to look at it and give an indication that the judge looked at it. Was that indication ever given here? Okay, I'm not, let me put it this way. I didn't, that aspect of Thompson did not jump out at me. What I am familiar with, though, is a case like People v. Goodman, which is a case cited by the defendant, in which the first district court says we are aware of no requirement that the trial court judge ask independent questions to determine the defendant's fitness. Now, I guess, I would say that those are maybe two separate issues. But the reason for the court to ask questions would be whether or not the report in front of the court answers what might be relevant questions about fitness in the first place. So, if the court has that report and is familiar with it, then I would say, you know, based on that, then there's no reason for the court to go ahead and ask questions. You're savvy, I see. So, then, the fact that, in my opinion, the way I read Thompson, that it says the court never gave any indication that it read the report. Again, whether or not we can presume that they read the report. It doesn't seem like that's the test that we should be looking to. Well, the presumption, again, is that the trial court knows the law, applies it properly, and has considered information in the court file. In this case, he signed an already prepared order, correct? Yes. Yes. I'm sorry. Let me just. The original argument, the argument that was brief, not necessarily the way that this is developed, but the argument that was brief was the proceedings below were flawed because the trial court judge didn't make, in this case, being judge active, make as strong of a fitness determination as Judge Gallagher made regarding the bonafide doubt of fitness. I mean, that was the original argument. Now that we're talking about whether or not there's sufficient evidence in the record to show that Judge Ackerman even read the fitness report. Wait a minute. Bonafide doubt as to fitness was already determined by the time it got there. But the argument originally was that Judge Gallagher did a better job of finding a bonafide doubt as to defendant's fitness because Judge Gallagher was more familiar with the defendant than Judge Ackerman was. But by the time it gets to Ackerman, that's not even an issue. Bonafide fitness is not even an issue. Well. Because he's already been evaluated by a psychiatrist, so in order to get that evaluation, there had to be a bonafide doubt as to fitness, correct? Right. Right. I want to be clear. It's not as though he was found fit. I mean, he's not found fit for another year or three months, I believe. Right, right. And arguably gets two fitness hearings because he gets the one in December of 2012 and then he gets the one in January of 2013 where the state and the defense, different ASAs, same PD, walk into court with the same stipulation. Was it the same stipulation? Exact same stipulation. I mean, they're literally, I actually missed it the first time I went through the record because I think there's maybe one or two pages separating them and they're identical. They're identical. But my point is, he got two fitness hearings. But let's just focus on the sufficiency of whether or not those hearings comply with Article 104 of the Code of Criminal Procedure. And the answer is they did. Because there's evidence, I would say, there's the presumption that the trial court judge read and was familiar with the court file. And here it's not as though Judge Ackerman, like, it would be a different story if Judge Ackerman said, I'm accepting the stipulation of the parties even though I've never seen Dr. Brown's report. Do you honestly think a trial judge is going to say, I didn't read the report, give me that stipulation? No, and I think I. I mean, Mr. Jacobson, really? No, no, no, absolutely not. But I think it's almost, I don't want to say, I don't want to say bad faith, but I mean, it almost looks like bad faith if we say, unless Judge Ackerman says on the record, oh, yeah, I remember this report, I definitely read it. But for us to presume that he did not or was not familiar with it. But isn't the requirement that there be, oh, let me back up. Sure. What is the defendant entitled to in a fitness hearing? He's entitled to, well, prior to the hearing, he's entitled to examination and to his fitness. At the hearing, he's entitled to present evidence if he so chooses, as is the state. And he's ultimately entitled to a factual determination on his fitness. And shouldn't the trial court make a factual determination? Shouldn't the trial court make a factual determination? I think the trial court did. I mean, here what we have is basically a stipulated bench trial on the issue of fitness. That's exactly right. And you cannot accept a stipulation to a finding of guilty. You can accept a stipulation as to testimony. But that's not the stipulation. And then the trial court makes determinations based on the testimony presented, not the ultimate finding. All right, so. And that's the difference here, I think. I get it. I get it. And I think what we're talking about, it's a very narrow line. Yes, it is. But I think here clearly the ball is on the other side and the touchdown was scored. And here's why. First, we presume that the trial court judge was familiar with the report. It is in the court file. I don't think anything more is required of him. If the legislature wanted more required of a trial court judge at a fitness hearing, we would have that as a requirement. I think if you look at the nature of the stipulation, though, this is where I felt as though the defendant was mischaracterizing the stipulation, it is not a stipulation as to the ultimate fact that the defendant is fit. It is a stipulation that Dr. Brown has experienced, spent time with the defendant, conducted this fitness examination back in September of 2011. It's not a stipulation as to the ultimate conclusion of the defendant's fitness. It is a stipulation that if called to testify, Dr. Brown would testify as to X, Y, and Z. Right. Now, what? It's a narrow distinction. It's a very narrow distinction. But I think it's one that makes all the difference in the world here. But doesn't, wasn't the stipulation the court, let's see, the proposed order said the court finds the defendant, Patrick Cook, is fit to stand trial based upon the opinions to a reasonable degree of medical certainty that Dr. Timothy Brown has outlined in the fitness evaluation dated September 22nd. There's not a fact in there other than the date. Well, I suppose the fact in there is. It's based upon the opinions. Wait a minute, wait a minute. If we have, at a hearing, why can't a trial court judge rely on expert opinion? Because we don't know what's in there. Let us make an expert. That's not a problem, but we don't have any facts. What facts do we have? The fact that we have is Dr., I mean, Dr. Brown laid out his, the facts in his report. In his report. No. Doesn't Robinson, Contour know? Don't they require us or require the judge to go back and reflect on the record that he has reviewed those opinions? No, I don't think so at all. I mean, I think that would be nice, but again, I would go back to the statement that's made in Goodman. The judge does not have to perform an on-the-record analysis and question the defendant regarding fitness. I accept that, but I think, but I think Ackman, Judge Ackman makes it maybe a little bit worse when he goes on to say in January, based on the stipulation the parties have all executed, the court will make the findings so indicated. Sure. What does that tell us? Nothing. Very good. I mean. But that's what he said. Tells us that he did nothing. No, no, no, no, no, no. It doesn't necessarily. On the face of it, it tells you that he did nothing. I agree with that. Okay. But we, it's not as though we're completely unaided in how we view the record here. There are presumptions at play. And so the presumption that the trial court judge did not do anything unless he explicitly stated it on the record doesn't exist. What the presumption is is that the trial court judge is familiar with the law of the case and the facts. And so I have, I mean, I have to believe it. Absent Judge Ackman saying on the record, I have no idea what this report is, the presumption must be he was familiar with the report. In order for him to take the stipulation of the parties. I would like it if Judge Ackman said something more. It would make my morning easier in front of you if he did. But the point is. Wouldn't it make his life much easier if judges complied with Robinson, complied with Contorno and said, went on a little bit further and said, you know, I reviewed the report. I reviewed the stipulation. Based upon my reading of the report and the opinion of the expert, I hereby find that manner of the stipulation. Absolutely. But I think the fundamental premise of your question to me stretches Robinson and Contorno. The holdings of those cases. In those cases, the defendant was arguing that, hey, all trial counsel did was stipulate to my fitness. I'm sorry. Well, all trial counsel and then the judge did. Because I believe one of them was an ineffective assistance of counsel case. But basically, that reads to me like the tantamount to a guilty plea. Like when a stipulated bench trial becomes a guilty plea. Effectively a guilty plea sort of case. In that counsels conceded the ultimate issue of fact that we're here to address. That was the argument that was being raised in Robinson and Contorno. It wasn't that there was insufficient evidence on the record to show that the judge was familiar with the expert's report regarding fitness. Or regarding his examination of the defendant's fitness. So to say that we're already outside the bounds of those opinions, I would respectfully disagree with that. I would put it, maybe this would help. If this court wants to write a script, like a very Justice Steigman-esque script for judges to follow in fitness proceedings and publish that opinion so the trial courts were in uniform on this particular issue, that would be phenomenal. Even if it would reverse. But my point is, I don't think that it leads to reversal here. Because as I said, I think, however you want to put it, I'm not great with sports analogies, but the ball is over the line essentially. Because here we have the presumption that Judge Agnew was familiar with the report. The report as a stipulation of the parties was not presented to the court as dispositive, as the parties stipulation to the ultimate issue of fact. It was merely presented as, if called to testify, this is what Dr. Brown would testify to. So I think that's what Robinson, Catorno, Goodman, Lewis, that's what those cases address. And so, and that's the way in which the defendant's argument was framed. Now, if we all want to say spiritually that there's something insufficient with that, I wouldn't disagree with you. But to say that the code requires something more is incorrect. I can't resist. Your football analogy is the ball appeared on the other side of the line, but we don't know how it got there. Okay. Well, this is why I'm not great with it. There's a finding of fitness, but how did we get there based on a stipulation? Okay. This is very easy. This is very easy. We got there because both parties walked into court and stipulated to Dr. Brown's report. Not Dr. Brown's ultimate conclusion that the defendant was fit. Merely the fact that Dr. Brown examined the defendant, ascertained certain clinical facts from that interview, and ultimately came up with his opinion on the defendant's fitness. Now, case law says the parties cannot stipulate to the ultimate issue of fitness. That goes back to People v. Lewis. Right. But to extend that whole thing. Who stipulates to the final conclusion of fitness? Well, then I guess, I mean, as long, if we were to jump off the page of Article 104, and I'm not actually sure what requirement, I'm not actually sure what the court would want. I mean, I agree with you that there are a lot of things missing here. But, I mean, what are we supposed to do at this point? Is Judge Ackman supposed to put the defendant on the stand? Is he supposed to start questioning him in open court? Is he supposed to ask counsel for his opinion? I mean, any one of those avenues is going to open up a numerous. Well, shouldn't he be a little more active in accepting the stipulation? Absolutely. I would hasten to add that he is not in the criminal court call anymore. So, I don't, I mean, he's not going to be sitting on fitness cases. But, I mean, like I said, if you want to write a script of what ideally should be said at these proceedings, this takes with you there. But if you want to say that the, if you want to say that Article 104 requires judges to do more, I would point this court to the case law cited by the defendant that says the trial court's not required to do anything more. Well, if you're saying this is like a stipulated bench trial, Justice Jorgensen authored an opinion on stipulated bench trials that did pretty much give us a bit of a script, and this was within the last 12 months, I think. I can't remember the name of it now, but it's out there. I mean, if we want to apply it to 104, I don't see that that's a huge stretch. But in essence, it says you are to do more than say we accept your stipulation. We want to know what you are stipulating to. And in Conterno, as in here, I'm not sure. I think there's some ambiguity about what the judge agreed to. I get what you're saying, but I actually don't see, you know, here I am out on a ledge, and I'm not 100% sure, but let me just say I don't see. Thank goodness it's not a football ledge. Thank you. This is a city sports analogy. But I don't actually see what the problem would be. Like, I don't see why we should be hesitant to apply guilty plea case logic to fitness proceedings. And the reason I say that is they're just fundamentally going to be different. You know, in a guilty plea scenario, you have the state gives its version of facts. You're not relying on a report of a witness's testimony. You're not dealing with expert witnesses, typically, in those situations. Or if you are, you're dealing with, you know, a smoothing of testimony. What difference would it make if the state got up there and said we have a stipulation, judge. Our stipulation is that Timothy Brown would testify to blah, blah, blah, blah, blah. What's the difference if it's in writing or not? That's exactly what we do at a plea. What separates that from a hearing versus. The amount of thoroughness. I mean, and obviously you're not going to want to hear Dr. Brown's report recited through, for lack of a better term, you're not going to want to hear it recited through, like, the lens of the state. You're not going to want us trying to translate Dr. Brown's report. I think it's always going to be, whether we call it best evidence or whatnot, it's always going to be more understandable to read Dr. Brown's report. Actually, it's most understandable to hear him testify. Sure, but he's not required to. He's not required to testify. And so if we can agree on that and we can agree that the parties here did not stipulate to the ultimate finding. But here's the bottom line. The state brings in whatever evidence they have to show the defendant is fit. They chose to do that by stipulation. Sure. And the stipulation is, here's our stipulation, Judge. He's fit. And the defense stands there and says nothing. So I'm so confused. Is Dr. Brown not supposed to make an ultimate conclusion in the report then? No, I'm not getting to that. Okay, okay. If you don't accept testimony, be it by stipulation or live testimony, what is the ultimate opinion based on? Well, I mean, it's naturally going, it's like most stipulated bench trials, it's naturally going to be a weak, it's not going to be a trial. I mean, if the defendant wanted a trial and wanted a hearing on the issue of fitness, he could have refused to stipulate. Did the defendant get due process? Was he afforded his due process rights by his just bare stipulation? Absolutely, absolutely. I mean, the defendant and his attorney are empowered to accept the state's stipulation. And as long as that stipulation was to what Dr. Brown would testify to, and that's as expert testimony, naturally going to have an opinion on the ultimate issue. But as long as it was, this is the sum of substance of Dr. Brown's testimony and not just, hey, he's fit or, hey, he's not fit. That's all that the case law requires. If there are no further questions. Thank you. Thank you. Mr. Hamill. A couple of fundamental points, I think, where I disagree with Mr. Jacobson. First of all, I don't think it is fair or it is accurate to say that this is a perfect fit for stipulating bench trial case law. I didn't really, when I asked the question, I didn't mean it to be a perfect fit. I meant, shouldn't we look to something like that, which is already out there? Sure. And I know that Mr. Jacobson took it one step beyond, and that's fine. He's entitled to do that. That's where I'm disagreeing. Because, you know, whether something's a stipulated bench trial or if it's a guilty plea and all that, that's kind of just determining which process is due to a defendant in a particular case. In this, the fitness statute puts an affirmative duty on the judge to make this determination. And he has to do it. So we're looking just at whether or not the record reflects that the judge did this, basically gave the defendant the process that's due to him, not which process is due to the defendant. And I also want to point out that in Contorno, and I think this is very important, the holding in Contorno is not that the judge did not make the proper inquiry. The holding in Contorno is that the record was ambiguous as to whether or not the judge himself made the inquiry. And that, I think, is the crucial distinction and the reason why this case falls under Contorno, is that it's not enough or, well, it's not required for me to show an affirmative, make an affirmative showing that the judge did not inquire. It's the burdens on the other side to show that the judge did. And here, I don't think the record shows that he did. But you would generally agree, though, or maybe not, that the judge doesn't have to put the defendant on the stand, doesn't have to do certain, you know, doesn't have to do an inquiry. Because in most of the cases, and I think this is the problem maybe with this one, the judge who makes the determination that there is a bona fide doubt that needs to be examined remains with the case. Here, we have an observation by Judge Gallagher. We don't know what, if anything, Judge Ackman saw. We don't know what, if anything, Judge Bowles saw. So we're creating sort of a different situation than any of the cases that we've been talking about. I would agree with all of that, yes. And I think that that all accounts for reversal here, because all that shows that we just don't know what Judge Ackman did and what Judge Ackman knew. One thing I also want to clear up about the framing of this argument, it's not a comparison between, I think it is actually true that Judge Gallagher did make a better finding of bona fide doubt than Judge Ackman did for fitness itself. But that's not really what we're talking about. What happened here is Judge Gallagher made the bona fide doubt finding. From there on, the defense proved presumed unfit until some judge somewhere along the line, obviously it doesn't have to be Judge Gallagher, but it has to be somebody, makes the finding that he is fit. And that's what just didn't happen here. So it's not a comparison between what the two judges did. It never was in the briefs either. So I would just want to clear that one up. And unless your honors have any further questions, I would ask that you reverse the matter for the fitness area. Thank you. Gentlemen, thank you both for your arguments. We'll take the matter under advisement, decision in due course. And now we're going to take a brief recess, about 25, 30 minutes to get ready for our last argument. Thank you.